DECISION
Defendant-appellant, the University of Cincinnati ("UC"), appeals from the decision and entry of the Ohio Court of Claims that Dr. Marc Sherman is not entitled to personal immunity pursuant to R.C. 9.86 and 2743.02(F). For the reasons that follow, we affirm the judgment of the Court of Claims.
Plaintiff-appellee, Thomas Lynd, underwent back surgery in January 1997. Following surgery, Mr. Lynd was treated at the Drake Center by Dr. Marc Sherman. The Drake Center is a county hospital that has both in-patient and out-patient rehabilitation services. UC provides teaching services to residents and medical students at the Drake Center. Dr. Sherman specializes in physical and rehabilitation medicine; he saw and treated Mr. Lynd through June 1997. While undergoing rehabilitation under the direction of Dr. Sherman, Mr. Lynd developed a spinal infection.
Plaintiffs-appellees, Thomas and Delores Lynd, brought an action in the Ohio Court of Claims alleging that UC (through Dr. Sherman) was negligent in its medical care and treatment of Thomas Lynd. The trial court determined that Dr. Sherman was not entitled to personal immunity based on stipulations of fact, depositions, exhibits, and legal briefs submitted by the parties regarding Dr. Sherman's immunity status. The trial court found that Dr. Sherman was employed both by UC and by University Rehabilitation, Inc. ("URI"), a non-profit professional practice corporation for the physicians of the Department of Physical Medicine and Rehabilitation at UC. The sole issue before the trial court was whether Dr. Sherman's services to Mr. Lynd were manifestly outside the scope of his employment as an assistant professor at UC.
The trial court found that Mr. Lynd was referred by his private physician to Dr. Rosenberg, who did not assert civil immunity as a state employee and who, in turn, referred Mr. Lynd to Dr. Sherman. The trial court also found that UC does not own or operate Drake Center. Based on these facts, the trial court found that Mr. Lynd was a private patient of Dr. Sherman rather than a patient of UC's medical facility.
The trial court further found that, during 1997, Dr. Sherman was paid a salary of $20,900.76 for his faculty duties at UC, and during the corporate fiscal year 1997, Dr. Sherman received approximately $103,000 for his employment with URI. URI billed $432,322.04 for Dr. Sherman's services during the fiscal year. URI contributed $106,000 to the UC academic department from upon the practice group as a whole. Additionally, URI contributed $35,000 to the UC self-insurance fund for malpractice coverage.
After weighing all of the evidence, the trial court found that Dr. Sherman was not acting within the course and scope of his employment as a UC faculty member when treating Mr. Lynd. The trial court further found that UC could not stipulate immunity for its physicians despite a board of trustees' resolution indicating that UC considers a faculty physician providing patient care to be within the scope of his university employment when providing patient care through an approved practice corporation.
UC appealed, assigning as error the following:
ASSIGNMENT OF ERROR NO. 1
 THE COURT OF CLAIMS ERRED, TO THE PREJUDICE OF APPELLANT, IN FINDING THAT DR. MARC SHERMAN IS NOT ENTITLED TO IMMUNITY UNDER R.C. 9.86.
ASSIGNMENT OF ERROR NO. 2
 THE COURT OF CLAIMS ERRED, TO THE PREJUDICE OF APPELLANT, IN HOLDING THAT THE BOARD OF TRUSTEES OF THE UNIVERSITY LACKS AUTHORITY TO DEFINE THE SCOPE OF EMPLOYMENT OF ITS FACULTY.
A determination as to whether or not a state employee is entitled to personal immunity is governed by R.C. 2743.02(F) and 9.86. R.C. 2743.02(F) provides, in pertinent part:
 A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.
R.C. 9.86 states, in part:
 * * * [N]o officer or employee shall be liable in any civil action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.
The issue of whether Dr. Sherman is entitled to immunity is a question of law. Nease v. Medical College Hosp. (1992),64 Ohio St.3d 396, 400 citing Conley v. Shearer (1992), 64 Ohio St.3d 284,292. However, the question of whether Dr. Sherman acted within the scope of his employment is a question of fact. SeeLowry v. Ohio State Highway Patrol (Feb. 27, 1997), Franklin App. No. 96API07-835, unreported (1997 Opinions 524, 533); Tschantz v.Ferguson (1989), 49 Ohio App.3d 9.
In its first assignment of error, UC argues that, as Dr. Sherman's employer, UC defined the scope of its employees' duties. In support of this argument, UC relies on a resolution of the Board of Trustees authorizing the establishment of the practice plan within the college of medicine. Appellant argues that, under the broad powers granted to the Board of Trustees under R.C.3361.03 and 3361.04 to operate UC and to make contracts incidental to the operation of the university, the authority of the Board of Trustees includes the authority to hire faculty physicians and to define the scope of their employment. As part of the stipulated facts in this case, UC prepared a statement regarding the scope of university employment for physicians on the faculty of the College of Medicine engaged in clinical practice. In that statement, UC indicated that it considered a faculty physician providing patient care to be within the course and scope of university employment when providing patient care through an approved practice corporation that operates on a not-for-profit basis and complies with the audit and reporting requirements set forth by the Board of Trustees.
In this case, the facts support the trial court's determination that Dr. Sherman was not entitled to personal immunity. The care and treatment in this case took place at the Drake Center which is not owned or operated by UC. The bill sent to Mr. Lynd for Dr. Sherman's care came from URI. Payments received from the billings to Mr. Lynd were made to URI. Moreover, the bill that Mr. Lynd received for his treatment at Drake Center did not reflect any payment to UC nor to URI.
Dr. Sherman's employment agreement with URI provides that Dr. Sherman will render professional patient care services,other than faculty services compensated by UC, exclusively on behalf of the corporation as its employee. Thus, the employment agreement itself makes a distinction between faculty services (UC employment) and patient care (corporate services by URI). This does not mean that Dr. Sherman could not be within the course and scope of his UC employment if he were supervising residents or medical students while rendering patient care. But in this case, the record is devoid of evidence that Dr. Sherman was conducting teaching activities or supervising residents at the time he was treating Mr. Lynd. Finally, Dr. Sherman received more than eighty percent of his combined total compensation from URI, and URI contributed to the UC self-insurance fund for malpractice coverage. Based on all of these factors, we agree with the determination of the trial court that Dr. Sherman saw Mr. Lynd as a private patient and not in his capacity as a member of the UC faculty supervising residents or teaching medical students. Accordingly, the first assignment of error is not well-taken and is overruled.
In the second assignment of error, UC asserts that its Board of Trustees is vested with the power to define the scope of employment of physicians employed through its various practice plan corporations. UC maintains that the Board of Trustees has broad statutory discretion to define the scope of faculty employment pursuant to its power to manage and operate the university in accordance with R.C. 3361.01 and its discretion to employ, compensate and do all things necessary for the creation, proper maintenance, and successful and continuous operation of the university in accordance with R.C. 3361.03.
We disagree with appellant's contention that UC can define whether a physician's interactions with a patient, in a particular case, were or were not manifestly outside of the scope of that physician's employment as a faculty member at UC. While the university's definition of an employee's duties is one factor to consider in each case, it is the responsibility of the Court of Claims, pursuant to R.C. 2743.02(F), to determine whether the state employee is entitled to personal immunity. As this court stated in Norman v. The Ohio State University Hospitals (Dec. 3, 1996), Franklin App. No. 96API04-403, unreported (1996 Opinions 4634, 4646), "University Hospitals and its medical staff may not circumvent this determination and unilaterally decide the rights of patients and physicians by internal regulatory fiat." In making these determinations, the Court of Claims must consider many factors in addition to the university's definition of the scope of its employees' duties and responsibilities. As such, R.C. 3361.01 and 3361.03 are not in conflict with the General Assembly's enactment of the civil immunity provisions of R.C. 9.86
and 2743.02(F). The second assignment of error is not well-taken and is overruled.
Based on the foregoing, the assignments of error are overruled and the judgment of the Ohio Court of Claims is hereby affirmed.
Judgment affirmed.
KENNEDY and BOWMAN, JJ., concur.